## HAYS *v.* THE STATE.

This being a case in which the evidence was decidedly conflicting, and the trial court in its instructions to the jury having not only failed altogether to mention the main contention of the accused, which was supported by evidence and which, if true, presented good matter of defense, but having also failed to fully and fairly submit to the jury the real issues involved and the law applicable thereto, the ends of justice require a new trial.

Argued October 19, — Decided November 26, 1900.

Indictment for murder.    Before Judge Falligant.    Chatham superior court.    September 17, 1900.

*Raiford Falligant* and *R. J. Travis*, for plaintiff in error.

*J. M. Terrell, attorney-general,* and *W. W. Osborne, solicitor-general,* contra.

LUMPKIN, P. J.    It appears from the record that Seaborn Hays was for disorderly conduct ejected from an electric car which was proceeding from a point outside of the corporate limits of Savannah to the city.    Upon the return of the same car from the city to a place near that at which the expulsion had taken place, the accused hailed the motorman, who stopped the car, and shortly after it came to a standstill he was shot and killed by the accused.    The latter was subsequently indicted and tried for murder, convicted, and sentenced to be executed.    The evidence in behalf of the State tended to show a wanton and unprovoked murder, without a shadow of excuse or justification.    That introduced in behalf of the accused, as well as his statement, tended to show that, after the car had stopped, he asked the motorman to request the conductor to return the fare which the accused had paid before being expelled from the car, and that in response to this request the motorman began firing at the accused, who thereupon in self-defense shot and killed his assailant.

A motion for a new trial was made and overruled, and Hays excepted.    This motion discloses that the accused contended, among other things, (1) that he had a right to peaceably demand a return of his fare, and (2) that he in fact did, in this manner, make or attempt to make such a demand.    The court in its charge to the jury stated the first of these contentions, but omitted to state the latter. The charge to the jury embraced instructions to the following effect: (*a*) Carriers of passengers may eject from their conveyances passengers who are "guilty of improper conduct, or of bad, dissolute, or

13

doubtful or suspicious character." (*b*) If the accused was wrongfully ejected from the railway-car, he had a right of action for the recovery of the money he had paid for his fare—"his right of action would be on the civil side of the court." (*c*) When a man has a civil right for damages, the courts present the proper forum for the enforcement of such a right—"the law on the civil side of the court is the proper forum to enforce a demand of that kind." (*d*) The accused "had no right at the point of the pistol, with a view to taking life in the enforcement of what he claimed to be his right, to enforce the demand—the civil demand—in a way of that kind." (*e*) "A man who claims to have a right, he may think he has a right, can not enforce it at the pistol's point with a view of taking life if the right is not granted according to his demand." (*f*) "When a party is not in the wrong, when he is guiltless, and he is put in a position where he has reasonable cause to believe a felony is about to be committed upon him, he has the right to kill to prevent a felony being committed upon his person."

The court nowhere in its charge instructed the jury to the effect that the accused had the right, in a peaceable and proper manner, to demand the return of his fare, if he in good faith believed he was entitled thereto; nor, as already observed, did the court inform the jury of the contention of the accused that, in such belief, he did peaceably attempt to secure a return of his money. The motion for a new trial distinctly makes the point that, in view of these omissions and of the instructions actually given upon this branch of the case, the accused did not have a fair and impartial trial. We are of the opinion that this point is well taken. Let it be borne in mind that the contentions of the accused were supported by sworn testimony which, if in every respect true, would have entitled him to an acquittal. The determination of the case depended largely upon the view taken by the jury with respect to the credibility of the witnesses sworn pro and con. Under these circumstances, the accused was entitled to a charge so framed as not to deprive him of any substantial element of the defense relied upon. Fairly summarized, the charge given amounted to about this: If the accused was unlawfully ejected from the car, it was his right to bring a civil action for damages, and he had no right to collect the money he claimed as his due at the point of a pistol; nor could he justify the killing upon the theory of self-defense, unless he was himself

entirely free from fault. As the jury were not instructed with respect to the right of the accused to peaceably demand a return of his fare, nor their attention called to his contention that he did this and no more before the motorman opened fire upon him, it is at least probable that the jury were led to infer that such a defense would be unavailing even if established, inasmuch as the court had instructed them that *the* remedy of the accused was to bring a civil action for damages. Who can say, therefore, that the jury did not in fact conclude that this was his only remedy, and that consequently he was necessarily in the wrong if he attempted to pursue any other course? If the jury entertained this belief or impression, it follows that they must have concluded that in no possible view of the transaction could the accused be considered blameless, and accordingly, under the instruction given them to the effect that he would have to be entirely without fault, they were constrained to find against his plea of self-defense, notwithstanding he had supported by evidence and by his statement the contentions upon which he predicated such defense. Whether the accused was legally entitled to a return of his money or not, it can not be questioned that, if he honestly believed he was, it was his right to peaceably ask that it be restored to him. This being so, the court should have distinctly stated to the jury both of his contentions with respect to this matter, and, in that connection, have given appropriate instructions. As this was not done, and as it is not only a case where the evidence was directly conflicting but one involving life, the ends of justice imperatively require another hearing.

*Judgment reversed. All the Justices concurring.*